IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK A. ROSE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * **Civil Action No.:** |
| | * |
| NATIONAL NUCLEAR SECURITY ADMINISTRATION | * |
| | * |
| and | * |
| | * |
| UNITED STATES DEPARTMENT OF ENERGY, | * |
| | * |
| Defendants | * |

# COMPLAINT

1.  Plaintiff, Frank Rose, brings this action against Defendants, the National Nuclear Security Administration ("NNSA") and the United States Department of Energy ("DOE"), seeking redress for egregious violations of his constitutional rights under the Fifth Amendment, including the deprivation of his right to due process, reputational harm, and constructive discharge.

2.  Following thirty (30) years of unblemished service in the national defense and security sector, Rose, a dedicated public servant and former Principal Deputy Administrator of the NNSA, was suddenly made aware of vague and unsubstantiated "complaints" about his workplace behavior while on official travel overseas on February 24, 2024.

3.  Instead of conducting any objective investigation or fact-finding process, NNSA and DOE took the false complaints at face value and swiftly facilitated Rose's unceremonious and involuntary departure, all the while failing to provide Rose with due process, including notice of the allegations, a fair hearing, or any opportunity to defend himself. NNSA and DOE's actions deprived Rose of his constitutionally protected liberty interest in his reputation and continued

1

employment, despite the fact that the President who appointed him was still in office—an egregious violation of his substantive due process rights. NNSA and DOE's actions inflicted irreparable reputational harm and effectively ended his professional career. Moreover, the Defendants' procedural failures—including a sham investigation by DOE's Office of Hearings and Appeals (OHA)—and their retaliatory actions further deprived Rose of fundamental due process protections and inflicted irreparable damages to his professional career in the national defense and security sector.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States, specifically the Fifth Amendment to the United States Constitution.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391, as the Defendants maintain their principal places of business within this District and/or the events giving rise to this action occurred within this District.

## III. PARTIES

6. Plaintiff, Frank A. Rose, is an individual and former Principal Deputy Administrator of the NNSA.

7. Defendant, DOE, is a federal executive department of the United States government that oversees the NNSA.

8. Defendant, NNSA, is an agency within the DOE, responsible for enhancing national security through the military application of nuclear science.

## IV. FACTUAL ALLEGATIONS

### *Rose's Tenure at NNSA*

9. Rose served as the Principal Deputy Administrator of the NNSA between August 2021 and April 2024, where he made numerous business decisions—including personnel and contract decisions—guided by the best interests of the agency and the broader national security mission. As a Senate-confirmed presidential appointee under the Biden administration, Rose was entrusted with significant executive responsibilities and was expected to serve at the pleasure of the President throughout the duration of the administration's term, barring any lawful removal process.

10. Under established legal and constitutional principles, presidential appointees are entitled to a degree of employment protection tied to the tenure of the President who appointed them. While such officials serve at the President's discretion, their removal must adhere to due process principles and cannot be the result of bad-faith accusations or procedural irregularities that deprive them of fundamental rights. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) ("[O]nce conferred, the process due is a constitutional requirement.").

### *February 2024: DOE Initiates a Sham Investigation*

11. On February 24, 2024, while on official travel in Hanoi, Vietnam, Administrator Jill Hruby of NNSA called Rose at 3:00am and informed him that she had received complaints regarding his workplace behavior. She referenced allegations of "hostile work environment" and "harassment." Rose emphatically denies these allegations.

12. Hruby assured Rose that DOE's Office of Hearings and Appeals (OHA) would conduct a "fact-finding" investigation.

13. Rose informed Hruby that he would fully cooperate with the investigation.

14. Hruby stated that this would be a "fair investigation" and that Rose would be interviewed as part of it.

15. Later that same day, on February 24, 2024, Hruby sent Rose an official email, copying Matthew Rotman, Deputy Director of the OHA, asking Rose to acknowledge that he understood there was an investigation and that he would not take retaliatory action against anyone.

16. Rose responded within a few hours, noting that he would cooperate fully with the investigation and would not engage in retaliation.

17. On February 26, 2024, Rose returned to Washington, DC from Vietnam.

18. On February 27, 2024, Rose returned to the NNSA office and reiterated to Administrator Hruby that he would fully cooperate with the investigation.

19. On March 4, 2024, Rose, again, communicated his availability for an interview for the OHA investigation.

20. On March 5, 2024, Rotman stated that "[w]e will certainly reach out if we need anything."

21. Later that same day, Rose acknowledged Rotman's communication and reiterated his availability for an interview for a fourth time.

### *March 2024: Investigation Concludes Without Interviewing Rose*

22. On March 12, 2025, Hruby informed Rose that the investigation had been completed and that three unidentified women had raised harassment and hostile work environment allegations against him.

23. Hruby also informed Rose that DOE would not interview him as part of DOE's investigation.

24. Despite Rose's willingness to cooperate, OHA never interviewed Rose or provided Rose with the specific allegations made against him.

25. Instead, DOE closed its investigation by mid-March 2024—without giving Rose an opportunity to defend himself.

26. On March 12, 2024, Hruby further advised Rose that Christopher Davis, the Chief of Staff at the U.S. Department of Energy (DOE), had conveyed that he no longer wanted Rose to remain in his position at the National Nuclear Security Administration (NNSA). According to Hruby, Davis explicitly stated that he wanted Rose "out" of the NNSA by the end of April 2024. This directive from a high-ranking official at the DOE made clear that Rose's continued employment at the agency was no longer tenable, regardless of his performance or tenure.

27. As a direct result of this communication, and under the pressure of an impending and involuntary separation, Rose was left with no reasonable alternative but to accept an early "retirement." Rose's decision was made under duress and was not the result of a voluntary or planned retirement process.

28. On March 28, 2024, Hruby sent an agency-wide email announcing Rose's retirement as of April 2024, effectively discharging Rose without due process.

### *April 2024: NNSA and DOE's Career Damage*

29. DOE's refusal to conduct a full and fair investigation of the false allegations against Rose, including, but not limited to, its failure to provide Rose with an opportunity to be heard, led to a false belief that Rose had engaged in sexual harassment.

30. DOE's actions have stigmatized Rose within the national security and defense industries and greatly hampered his future employment prospects.

31. On April 10, 2024, Deputy General Counsel for DOE Jocelyn Richards sent an email to Rose stating:

> In mid-February of 2024, NNSA received several complaints outlining allegations of harassment or hostile work environment by Frank Rose, the Principal Deputy Administrator of NNSA. NNSA management promptly requested that DOE's Office of Hearings and Appeals (OHA) conduct an independent internal fact-finding review into allegations regarding potential inappropriate workplace conduct by Mr. Rose. The fact-finding commenced in early March 2024. The fact-finding has not been completed, as Mr. Rose is expected to leave the Department in late April 2024.

32. Rose requested additional information about the complaints but never received a response.

33. Without providing Rose any opportunity to defend himself, Rose was abruptly forced to resign in April 2024, effectively ending his career without due process.

34. Initially, DOE, through the Secretary's office, agreed to allow Rose to take early retirement in recognition of his more than twenty (20) years of federal service and his eligibility based on age. However, this agreement was inexplicably revoked—only to be reinstated later following Hruby's intervention.

35. Rose was ultimately forced to resign on April 30, 2024. Prior to his departure and contrary to Richards' April 10, 2024 email, DOE officials had already made it clear that the investigation was deemed "complete" and that there was no intention of interviewing him—particularly because Davis had insisted that Rose be forced out by the end of April.

36. On May 29, 2024, Richards advised that "[a]ny further pursuit of the inquiry was rendered moot by Mr. Rose's retirement." However, this statement directly contradicted the fact that Hruby had been informed as early as March 2024 that DOE had already closed the investigation and had no plans to interview Rose.

37. The DOE OHA's handling of the matter was deeply flawed, lacking any semblance of procedural fairness. The failure to complete a thorough investigation, provide Rose with details of the allegations, or even interview him reflects an arbitrary and capricious process that defies basic principles of justice.

38. To further compound the harm, Rose's retirement application was ultimately denied by the Office of Personnel Management (OPM) due to a misapplication of eligibility criteria. Rose's subsequent appeal, which clearly demonstrated his qualification for a Discontinued Service Retirement, remains unresolved.

39. In September 2024, Rose filed a complaint with the DOE and DOD Inspectors General concerning the sham DOE investigation and related matters. To date, Rose has received no response.

40. As a Senate-confirmed political appointee, Rose served at the discretion of President Biden.

41. While President Biden did not remove Rose from office, DOE's sham investigation was weaponized to force Rose out nonetheless.

42. NNSA and DOE's actions caused NNSA and DOE employees and energy industry colleagues to believe that Rose engaged in sexual harassment.

43. As a result, Rose has endured an unjustified and incorrect stigma that has hampered his ability to obtain employment.

44. NNSA and DOE's actions deprived Rose of due process, irreparably damaging his career and reputation.

45. NNSA and DOE's actions have irreparably damaged Rose's professional standing and hampered his ability to obtain subsequent employment.

46. Since his forced resignation, Rose has been rejected from applications he submitted for more than 20 positions for which he was highly qualified and has lost lucrative professional opportunities.

47. As a direct result of NNSA and DOE's misconduct, Rose has suffered a violation of his constitutional rights, including his liberty interests in his reputation and right to pursue his chosen profession.

### Count I: Violation of Substantive Due Process (Fifth Amendment)

68. Rose incorporates by reference the preceding paragraphs as if fully set forth herein.

69. The actions of the NNSA and DOE unlawfully deprived Rose of his liberty interests in his reputation and right to pursue his chosen profession, in violation of his substantive due process rights under the Fifth Amendment.

70. Specifically, the NNSA and DOE: (1) subjected Rose to an adverse employment action by terminating his employment based on false and unsubstantiated allegations; (2) engaged in stigmatizing and defamatory conduct closely connected with that termination, including disseminating or relying upon false accusations without affording Rose an adequate opportunity to respond; and (3) as a result, substantially hindered Rose's ability to secure subsequent employment in his field, thereby infringing upon his liberty interests in violation of 42 U.S.C. § 1983.

71. The conduct of the NNSA and DOE—including a fundamentally flawed and biased investigation, denial of due process safeguards, and the arbitrary acceptance of false allegations—constitutes conscience-shocking, arbitrary, and capricious government action in violation of substantive due process.

72. As a direct and proximate result of this constitutional violation, Rose has suffered and continues to suffer severe harm to his professional reputation, the loss of employment opportunities, and ongoing damage to his career.

## PRAYER FOR RELIEF

WHEREFORE, Rose prays for judgment against Defendants as follows:

a. For a declaration that the NNSA and DOE's actions violated Rose's substantive due process rights under the Fifth Amendment by subjecting him to an adverse employment action, engaging in stigmatizing conduct connected to that action, and impairing his ability to pursue future employment;

b. For compensatory damages to redress the harm suffered by Rose, including damage to his reputation, professional standing, emotional well-being, lost income, and diminished future earning capacity;

c. For punitive damages in an amount sufficient to deter the NNSA and DOE, and similarly situated government actors, from engaging in such arbitrary and conscience-shocking conduct;

d. For attorneys' fees and costs incurred in prosecuting this action;

e. For such other and further relief as the Court deems just and proper; and

f. To the extent applicable, for relief related to the loss or impairment of Rose's retirement benefits and eligibility resulting from the adverse employment action, or, in the alternative, leave to amend to seek such relief upon further factual development.

## JURY DEMAND

Rose demands a trial by jury on all issues so triable.

Dated: March 27, 2025                                                       Respectfully submitted,

**OFFIT KURMAN, P.C.**

*/s/ Anders T. Sleight*
Anders T. Sleight, Esq.
(DC Bar No.: 1019232)
Offit | Kurman, P.C.
8000 Towers Crescent Dr., Suite 1400

Tysons Corner, VA 22182
Tel:  703-745-1852
Fax: 703-745-1835
anders.sleight@offitkurman.com

*/s/ Kimberly C. Lau*
Kimberly C. Lau, Esq.
(*pro hac vice* pending)
Offit Kurman, P.A.
590 Madison Avenue, 6th Floor
New York, New York 10022
(212) 545-1900
kimberly.lau@offitkurman.com

*/s/ Sarah R. Goodman*
Sarah Goodman, Esq.
(*pro hac vice* pending)
Offit Kurman, P.C.
1801 Market Street, Suite 2300
Philadelphia, PA 19103
(267) 338-1319
sarah.goodman@offitkurman.com

*Counsel for Plaintiff Frank Rose*