UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FRANK A. ROSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 25-0912 (PLF) |
| | ) |
| NATIONAL NUCLEAR SECURITY | ) |
| ADMINISTRATION, et al., | ) |
| | ) |
| Defendants. | ) |

OPINION

Plaintiff, Frank Rose, is the former Principal Deputy Administrator of the National Nuclear Security Administration ("NNSA"). In February 2024, after 30 years of service in the national defense and security sector, Mr. Rose was informed of complaints against him alleging misconduct relating to sexual harassment and the creation of a hostile work environment. An investigation into the allegations was opened by the Department of Energy's ("DOE") Office of Hearings and Appeals ("OHA"), but Mr. Rose asserts that he was never given specific details regarding the charges against him and was never interviewed. After being told in mid-March that the investigation was complete and a high-ranking official from DOE no longer wanted Mr. Rose to remain in his position at NNSA, Mr. Rose accepted early retirement. Later communications by DOE informed NNSA and DOE employees of the charges and subsequent investigation but stated that the investigation was never completed because of Mr. Rose's retirement.

Mr. Rose brought this action against NNSA and DOE seeking declaratory relief for violations of his procedural and substantive due process rights. The defendants moved to

dismiss the complaint, and the Court heard argument on the defendants' motion on January 21, 2026. It denied defendants' motion with respect to plaintiff's procedural due process claim (Count I) and took under advisement the portion of the motion regarding his substantive due process claim (Count II).  Upon careful consideration of the parties' written submissions, oral arguments and the relevant authorities, for the reasons set forth on the record in open court and those that follow, the Court will grant the motion in part and deny it in part.[1]

## I.   BACKGROUND

### A.  *Factual Background*

Mr. Rose, in his position as the Principal Deputy Administrator of the NNSA between August 2021 and April 2024, served as a Senate-confirmed presidential appointee, nominated by President Biden.  Am. Compl. ¶¶ 9-10.  On February 24, 2024, NNSA Administrator Jill Hruby ("Ms. Hruby") called to inform Mr. Rose of complaints regarding workplace behavior, providing no specific details about the complaints and offering only vague statements regarding "hostile work environment" and "harassment."  Id. ¶¶ 15-16.  Mr. Rose denies these allegations.  Id. ¶ 17.  Ms. Hruby informed Mr. Rose during the phone call and later in an official email that the DOE's Office of Hearings and Appeals ("OHA") would conduct a "fair" "fact-finding" investigation, including an interview.  Id. ¶¶ 18, 20-21.  Mr. Rose repeatedly reiterated his willingness to fully cooperate in the investigation and communicated his availability for an interview.  Id. ¶¶ 19, 22, 24-27.  Mr. Rose was never interviewed.  Id. ¶ 31.

---

[1]   The Court has reviewed the following papers in connection with this matter: Amended Complaint ("Am. Compl.") [Dkt. No. 17]; Defendants' Motion to Dismiss ("Defs' Mot.) [Dkt. No. 21]; Plaintiff's Response in Opposition ("Opp.") [Dkt. No. 24]; and Defendant's Reply ("Def's Reply") [Dkt. No. 25].

On March 12, 2024, still without providing specific details of the accusations against him, Ms. Hruby informed Mr. Rose that the investigation had been completed and he would not be interviewed. Am. Compl. ¶¶ 28-30. She further advised that the Chief of Staff at DOE "no longer wanted Rose to remain in his position at NNSA" and wanted him "'out' . . . by the end of April 2024." Id. ¶¶ 33-34. This directive from a high-ranking DOE official "made clear" to Mr. Rose that he "would never be given an opportunity to refute the undefined charges against him" and that his continued employment at NNSA was "no longer tenable." Id. ¶ 35. In response to this communication and the pressure of an "impending and involuntary separation," Mr. Rose believed he was left with "no reasonable alternative" other than to accept that he would be "constructively discharged under the guise of an early 'retirement.'" Id. ¶ 36. Mr. Rose's decision to accept early retirement "was made under duress…not the result of a voluntary or planned retirement process." Id. ¶ 37.

On March 28, 2024, Ms. Hruby sent an agency-wide email announcing Mr. Rose's retirement as of April 2024, "constructively discharging Rose." Am. Compl. ¶ 38. In an April 10, 2024 email, Jocelyn Richards, Deputy General Counsel for DOE stated:

> In mid-February of 2024, NNSA received several complaints outlining allegations of harassment or hostile work environment by Frank Rose, the Principal Deputy Administrator of NNSA. NNSA management promptly requested that DOE's Office of Hearings and Appeals (OHA) conduct an independent internal fact-finding review into allegations regarding potential inappropriate workplace conduct by Mr. Rose. The fact-finding commenced in early March 2024. The fact-finding has not been completed, as Mr. Rose is expected to leave the Department in late April 2024.

Id. ¶ 39. Mr. Rose requested more information about the complaints, but never received a response. Id. ¶ 42.

On May 29, 2024, Richards advised that "[a]ny further pursuit of the inquiry [of the undefined allegations against Rose] was rendered moot by Mr. Rose's retirement," confirming that defendants "had no intention of providing Rose with the process he was due prior to his constructive discharge." Am. Compl. ¶¶ 67, 70. Contrary to the April 10 email and May 29 statement, "DOE officials" had previously "made it clear" to Mr. Rose that "the investigation was deemed 'complete' and that there was no intention of interviewing him." Id. ¶¶ 42, 69; see id. ¶¶ 28-30, 39-40. Thus, Mr. Rose asserts, "Richards either knowingly misrepresented the status of the investigation or was provided with false information by employees within DOE." Id. ¶ 42. Ultimately, defendants "forced" Mr. Rose to resign on April 30, 2024, having never provided him with notice of the charges against him or any opportunity to defend himself. Id. ¶¶ 43, 44. In September 2024, Mr. Rose filed a complaint with DOE and the Department of Defense's Inspector General concerning the "sham" investigation, but to date he has received no response to his complaint. Id. ¶¶ 73-74.

Mr. Rose asserts that his reputation was "stigmatized" by defendants' charging him with misconduct, "namely creating a hostile work environment and subjecting female employees to harassment." Am. Compl. ¶ 45. He further asserts that these charges were disseminated to employees within DOE and NNSA, who were also aware that "at the culmination of DOE's sham investigation," he left NNSA. Id. ¶¶ 47-48. In addition, Mr. Rose asserts that defendants disseminated "the existence of the charges against [him] and the subsequent deficient investigation" to private sector employers." Id. ¶ 50. According to Mr. Rose, defendants' dissemination, "coupled with the timing of Rose's unexpected and forced departure from NNSA," led both private sector employers and DOE and NNSA employees to

4

"false[ly]" believe that "[he] had engaged in sexual harassment in the workplace and created a hostile work environment." Id. ¶¶ 46, 51.

Mr. Rose asserts that defendants' actions and the "improper charges" against him have attached a "continuing stigma" to him, significantly "hampered" his employment prospects, "foreclosed [his] freedom" to take advantage of "other" employment opportunities, and "seriously affected, if not destroyed," his "ability to pursue his chosen career." Am. Compl. ¶¶ 52-56. Since his "constructive discharge" from NNSA, Mr. Rose has been unable to obtain work despite applying to "more than 20" positions for which he was "highly qualified," and has lost "other lucrative professional opportunities." Id. ¶ 53.

B. Procedural History

Mr. Rose originally filed suit on March 27, 2025. See Complaint [Dkt. No. 1]. After defendants filed a motion to dismiss on July 28, 2025, see Motion to Dismiss [Dkt. No. 15], Mr. Rose filed an amended complaint on August 25, 2025. See Am. Compl. [Dkt. No. 17]. He brings two counts against both defendants: a Fifth Amendment violation of procedural due process, and a Fifth Amendment violation of substantive due process. See id. ¶¶ 75-93. Mr. Rose seeks declaratory relief and "relief related to the loss or impairment of [his] retirement benefits and eligibility resulting from the adverse employment action." Id. at 13-14. On December 1, 2025, defendants filed this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Defs' Mot. [Dkt. No. 21].

On January 21, 2026, the Court heard argument on defendants' motion to dismiss. In an oral opinion, the Court held that Mr. Rose has plausibly alleged that defendants deprived him of his protected liberty interest in his reputation in violation of his Fifth Amendment right to

procedural due process. The Court therefore denied defendants' motion to dismiss as to Count I of Mr. Rose's amended complaint. The Court now turns to Count II of Mr. Rose's amended complaint: substantive due process.

## II.     LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must plead facts that "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 570); see Spence v. U.S. Dep't of Veterans Affs., 109 F.4th 531, 539 (D.C. Cir. 2024). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 218 (D.C. Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. at 678). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56.

In deciding a motion to dismiss under Rule 12(b)(6), the Court "must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Sanchez v. Off. of State Superintendent of Educ., 45 F.4th 388, 395 (D.C. Cir. 2022); see Ashcroft v. Iqbal, 556 U.S. at 678. The Court considers the complaint in its entirety, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007), and construes it liberally, granting

6

plaintiffs "the benefit of all inferences that can [reasonably] be derived from the facts alleged." See Sickle v. Torres Advanced Enter. Sols., LLC., 884 F.3d 338, 345 (D.C. Cir. 2018) (alteration in original).  The Court, however, need not accept all inferences drawn by the plaintiff "if such inferences are unsupported by the facts set out in the complaint."  Nurriddin v. Bolden, 818 F.3d 751, 756 (D.C. Cir. 2016); see Ashcroft v. Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. at 678; see also Kaempa v. Myers, 367 F.3d 958, 963 (D.C. Cir. 2004).

III.   DISCUSSION

*Count II: Substantive Due Process*

"The due process guarantee has both procedural and substantive components." Jacinto-Castanon de Nolasco v. U.S. Immigration & Customs Enf't, 319 F. Supp. 3d 491, 499 (D.D.C. 2018).  "Under either theory, a plaintiff must allege [he or] she 'has been deprived of a fundamental right or liberty or property interest.'"  Akrayi v. United States Dep't of State, Civil Action No. 22-1289 (CRC), 2023 WL 2424600, at *6 (D.D.C. Mar. 9, 2023) (quoting Meyou v. U.S. Dep't of State, Civil Action No. 21-2806 (JDB), 2022 WL 1556344, at *5 (D.D.C. May 17, 2022)).  Mr. Rose's substantive due process claim, like his procedural due process claim, rests on his assertion that defendants' actions "unlawfully deprived [him] of his liberty interests in his reputation and the right to pursue his chosen profession."  See Am. Compl. ¶ 85.

In determining whether a plaintiff states a substantive due process claim, the Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-

ended." Est. of Phillips v. D.C., 455 F.3d 397, 403 (D.C. Cir. 2006) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Accordingly, in its analysis the Court must "focus on the allegations in the complaint to determine how petitioner describes the constitutional right at stake and what the [defendants] allegedly did to deprive [him] . . . of that right." Collins v. City of Harker Heights, 503 U.S. at 125. To constitute a substantive due process violation, the government's behavior must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." See County. of Sacramento v. Lewis, 523 U.S. 833, 847-48 n. 8 (1998) (noting that this is a "threshold question"); see also Collins v. City of Harker Heights, 503 U.S. at 128 (emphasizing that only the most egregious official conduct can be "arbitrary in a constitutional sense"); Butera v. D.C., 235 F.3d 637, 651 (D.C. Cir. 2001) ("This stringent requirement" that the state's conduct be sufficiently egregious to shock the conscience "exists to differentiate substantive due process, which is intended only to protect against arbitrary government action, from local tort law").

Thus, even if the Court accepts, as it has, that Mr. Rose has sufficiently alleged a cognizable deprivation of a liberty interest, "a question would remain: do his pleadings state plausible allegations of conduct that may fairly be said to shock the contemporary conscience?" see Abdelfattah v. U.S. Dep't of Homeland Sec., 787 F.3d 524, 541 (D.C. Cir. 2015) (internal quotations and citations omitted). Defendants maintain that "[t]here is not a single allegation in the amended complaint that the Defendants engaged in any conduct that could remotely be considered egregious, outrageous, or so shocking that it offends the contemporary conscious." Defs' Mot. at 12-13. The Court agrees.

In support of his substantive due process claim, Mr. Rose asserts that defendants' actions reveal a deliberate "plan to summarily drum Rose out of public service," as evidenced by

defendants' "shocking refusal to provide Rose with notice of the allegations against him and their outrageous refusal to speak with Rose so that he could defend himself before closing the investigation." See Am. Compl. ¶ 63. He further asserts that this conduct — "including a fundamentally flawed and biased investigation, denial of due process safeguards, and the arbitrary acceptance of false allegations — constitutes conscience-shocking, arbitrary, and capricious government action in violation of substantive due process." See Am. Compl. ¶ 88; see also Am. Compl. ¶ 59 ("These failures further reflect an arbitrary and capricious process that defies basic principles of justice.").

Unfortunately for Mr. Rose, "[m]erely labeling a governmental action as arbitrary and capricious, in the absence of a deprivation of life, liberty, or property, will not support a substantive due process claim." Abdelfattah v. U.S. Dep't of Homeland Sec., 787 F.3d at 541 (quoting Singleton v. Cecil, 176 F.3d 419, 424 (8th Cir.1999) (en banc)). Defendants' investigation into the allegations against Mr. Rose — including their alleged failure to interview him and misrepresentations about the progress of the investigation — while no doubt frustrating and distressing, "in no way approach the cognizable level of executive abuse of power as that which shocks the conscience." See Fraternal Ord. of Police Dep't of Corr. Lab. Comm. v. Williams, 375 F.3d 1141, 1145 (D.C. Cir. 2004) (internal quotations and citations omitted); Abdelfattah v. U.S. Dep't of Homeland Sec., 787 F.3d at 542 ("Accepting the facts as true, Abdelfattah has gone through an ordeal that surely has been frustrating, distressing, and, at intervals, infuriating, but the exasperation engendered by bureaucratic obduracy is probably not enough [to plausibly allege a substantive due process violation].")

Although what rises to the cognizable level of conscience shocking cannot be measured by a "calibrated yard stick," County of Sacramento v. Lewis, 523 U.S. at 847 (quoting

9

Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)), it is "conduct intended to injure in some way unjustifiable by any government interest"— and not such everyday employment disputes — that "is the sort of official action most likely to rise to the conscience-shocking level." Id., 523 U.S. at 849 (citing Daniels v. Williams, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property.") (emphasis in original))); see also Fraternal Ord. of Police Dep't of Corr. Lab. Comm. v. Williams, 375 F.3d at 1145. The Due Process Clause "is not a guarantee against incorrect or ill-advised personnel decisions." See Bishop v. Wood, 426 U.S. 341, 350 (1976); id. ("The United States Constitution cannot feasibly be construed to require federal judicial review for every . . . error" involving "the multitude of personnel decisions that are made daily by public agencies.").

    These cases seem to the Court to defeat Mr. Rose's substantive due process claim. In response to this line of cases, Mr. Rose argues that his allegations that defendants' "deliberate conduct" was "meant to injure [him]" are "sufficient to allege a violation of substantive due process." See Opp. at 37 (citing Am. Compl. ¶¶ 19-20, 28-35, 58-70, 88-92) (detailing defendants' alleged deliberate decisions)). He further argues, "surely railroading an individual with a decades-long unblemished career in public and private service while withholding the substance of the allegations pending against him and refusing to permit him an opportunity to defend himself" amounts to the type of unjustifiable government conduct that implicates the substantive due process clause. See Opp. at 37-38. In view of unequivocal Supreme Court precedent, the Court must disagree. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to withstand a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. at 678. Mr. Rose's amended complaint fails to plead sufficient facts

10

to state a plausible claim that defendants' alleged conduct—even if deliberate and injurious—was "so egregious, so outrageous" that it can fairly be said to be arbitrary, or conscience shocking, in a constitutional sense. See County of Sacramento v. Lewis, 523 U.S. at 847-48 n. 8. These allegations are simply insufficient. Accordingly, Mr. Rose's substantive due process claim must be dismissed.

## IV. CONCLUSION

For the reason set forth in this opinion and those set forth on the record in open court on January 21, 2026, the defendants' Motion to Dismiss [Dkt. 21] is hereby granted in part and denied in part.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 28, 2026